IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CRIMINAL NUMBER H-22-072 |
| § | |
| ROBERT EARL LOCKET, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Robert Earl Locket ("Defendant") is charged with one count of being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1] Pending before the court is Defendant's Motion to Suppress (Docket Entry No. 28), which argues that the warranted search uncovering the weapon in question violated the Fourth Amendment.[2] Defendant has also filed a Motion to Dismiss (Docket Entry No. 29), arguing that 18 U.S.C. § 922(g)(1) violates the Second Amendment and Equal Protection Clause and that it exceeds Congress's authority under the Commerce Clause.[3] For the reasons stated below, Defendant's Motion to Suppress and Motion to Dismiss will be denied.

---

[1] Indictment, Docket Entry No. 1, p. 1. For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

[2] Defendant's Motion to Suppress, Docket Entry No. 28, p. 1.

[3] Motion to Dismiss, Docket Entry No 29, pp. 1, 9, 11.

I.  **Background**

On February 9, 2021, the Bryan Police Department presented an Affidavit for Search Warrant prepared by Officer Corbin Seawell ("Seawell's Affidavit") to the 85th Judicial District Court in Brazos County, Texas.[4] Seawell's Affidavit requested a warrant authorizing a search of a residence controlled by Defendant at 1100 Orlean Street, Bryan, Texas.[5] Seawell stated that he believed controlled substances and instruments for distributing controlled substances would be found at the residence.[6]

Seawell based that belief on several grounds. First Seawell referenced Defendant's criminal history. He cited Defendant's 2005 convictions for "Possession w/ Intent PG 1 4G < 200G (cocaine)" and "Possession of Marijuana 4OZ < 5LBS" and his 2010 conviction for "Manufacture/Delivery of a Controlled Substance in Penalty Group 1 4G < 200G."[7] Seawell also stated that "[s]ince then, [Defendant] has been arrested numerous times for an array of charges which include several drug related charges as well as Tampering/ Fabricating w/ Physical Evidence" and that "[s]everal of these arrests show to be convictions."[8] Defendant has been arrested and

---

[4] Affidavit for Search Warrant ("Seawell's Affidavit"), Exhibit A to Defendant's Motion to Suppress, Docket Entry No. 28-2, pp. 1, 8.

[5] Id. at 1 ¶¶ 1-2.

[6] Id. at 2 ¶ 3.

[7] Id. at 3.

[8] Id.

charged multiple times since 2010, but none of them appear to have resulted in convictions.⁹  The Government concedes that the assertion of post-2010 convictions is false.¹⁰

Seawell also cited a confidential source "that provided information stating [Defendant] was still dealing an array of narcotics within the city of Bryan."¹¹  "The source advised [that Defendant] was selling large quantities of marijuana, cocaine, and ecstasy."¹²  The confidential source provided general information about Defendant's place of residence and vehicles driven by Defendant, which Seawell verified during surveillance of Defendant.¹³

Seawell also summarized his own surveillance of Defendant over the preceding six months.  Seawell described a number of suspected drug transactions that he observed.  Seawell did not observe the substances he suspected were being exchanged, but he described conduct indicative of drug distribution.  Seawell stated that on once instance, Defendant wore a "blue nitrile style glove" while appearing to make an exchange with an individual from a vehicle.¹⁴

---

⁹Pretrial Report, Exhibit B to Defendant's Motion to Suppress, Docket Entry No. 28-3, pp. 3-4.

¹⁰Government's Response to Defense Motion to Suppress Evidence ("Government's MTS Response"), Docket Entry No. 31, p. 7.

¹¹Seawell's Affidavit, Exhibit A to Defendant's Motion to Suppress, Docket Entry No. 28-2, p. 3.

¹²Id.

¹³Id. at 3-4, 6.

¹⁴Id. at 4-5.

On another instance Defendant was observed driving from 1100 Orleans Street to a nearby mart, followed by an individual in a Dodge Charger.[15] After parking at the mart, Defendant approached the Charger's driver's side window, and the Charger drove away seconds later.[16] Officers soon pulled over the Charger, searched it, and recovered a gun and three pills containing fentanyl.[17]

Officers conducted a trash pull from 1100 Orleans Street on October 5, 2020.[18] The trash had "mail [] addressed to several people which included . . . [Defendant]." It also had a short straw. A field test of the straw revealed a positive indication for the presence of cocaine.[19]

Seawell stated in his Affidavit that within the preceding 72 hours he spoke again with the confidential source.[20] "The source stated that marijuana as well as prescription medication was observed at 1100 Orlean St. The source stated that they were unsure what the medication was, but stated it is not prescribed to [Defendant], and is purchased solely for the purpose of reselling it."[21] Here the Affidavit includes a handwritten and initialed note

---

[15] Id. at 6.

[16] Id.

[17] Id. at 7.

[18] Id. at 5.

[19] Id. at 5-6.

[20] Id. at 8.

[21] Id.

that "[t]he source had been inside the residence and observed the drugs inside."[22]

On February 9, 2021, Judge Kyle Hawthorne of the 85th Judicial District Court in Brazos County issued a warrant authorizing the search of 1100 Orleans Street based on Seawell's Affidavit.[23] The search warrant was executed on February 10, 2021, and among the seized items was a "S&W pistol HMW9676."[24]

On February 9, 2022, a Southern District of Texas grand jury charged Defendant with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), specifying a "Smith and Wesson, Model M&P Shield, 9mm pistol" that "was in and affecting interstate commerce."[25] Defendant's Motion to Suppress and Motion to Dismiss were filed on May 30, 2023.[26] The United States ("the Government") responded to both motions on June 30, 2023.[27]

---

[22]Id. The handwritten note appears to be initialed "CS" and "KH." The Affidavit was signed by Officer Corbin Seawell and Judge Kyle Hawthorne.

[23]Search Warrant, found at page 10 of Exhibit A to Defendant's Motion to Suppress, Docket Entry No. 28-2, p. 12.

[24]Return KH-043-21, found at page 13 of Exhibit A to Defendant's Motion to Suppress, Docket Entry No. 28-2, p. 13.

[25]Indictment, Docket Entry No. 1, p. 1.

[26]Defendant's Motion to Suppress, Docket Entry No. 28; Motion to Dismiss, Docket Entry No. 29.

[27]Government's MTS Response, Docket Entry No. 31; Government's Response in Opposition to Defendant's Motion to Dismiss ("Government's MTD Response"), Docket Entry No. 32.

## II. Defendant's Motion to Suppress

### A. Federal Rule of Criminal Procedure 12(b)(3)

Rule 12(b)(3) states that suppression of evidence "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits."

### B. Fourth Amendment Standard for a Warranted Search

"The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Carpenter v. United States, 138 S. Ct. 2206, 2213 (2018) (internal quotation marks omitted). "To be deemed reasonable, a search generally must be supported by a warrant issued upon probable cause." United Transportation Union v. Foster, 205 F.3d 851, 858 n.12 (5th Cir. 2000). Probable cause for a search warrant exists if "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found" at the location to be searched. Illinois v. Gates, 103 S. Ct. 2317, 2320 (1983). Under the well-established "exclusionary rule," "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." United States v. Calandra, 94 S. Ct. 613, 619 (1974).

"Under the good faith exception, evidence obtained during the execution of a warrant later determined to be deficient is

nonetheless admissible if the executing officer's reliance on the warrant was objectively reasonable and made in good faith." United States v. Woerner, 709 F.3d 527, 533 (5th Cir. 2013). In evaluating the good-faith exception, the court asks "whether a reasonably well trained officer would have known that the search was illegal despite the [judge's] authorization." United States v. Leon, 104 S. Ct. 3405, 3420 n.23 (1984). The good-faith exception does not apply "when the issuing [judge] was misled by information in an affidavit that the affiant knew or reasonably should have known was false." Woerner, 709 F.3d at 534. In other words, if the affidavit included false statements, the court asks whether the affiant "made the false statement intentionally or with reckless disregard for the truth." United States v. Ortega, 854 F.3d 818, 827 (5th Cir. 2017). If the court finds that the affiant did so, the court must then determine whether "after setting aside the false statement, the affidavit's remaining content is insufficient to establish probable cause." Id. at 826.

C.  **Whether the Good-Faith Exception Applies**

Defendant argues that the good-faith exception does not apply because Officer Seawell falsely stated that "[s]everal of [Defendant's post-2010] arrests show to be convictions."[28] The Government concedes that this statement was false but argues that

---

[28]Seawell's Affidavit, Exhibit A to Defendant's Motion to Suppress, Docket Entry No. 28-2, p. 3.

"there is nothing to show that this was intentional or malicious."[29] It is Defendant's burden to show by a preponderance of the evidence that the false statements were made intentionally or recklessly. United States v. Cavazos, 288 F.3d 706, 710 (5th Cir. 2002). But the presence of convictions in a criminal history is simple and readily verifiable information. Where such information is incorrectly communicated in a search warrant affidavit, an inference of recklessness may be justified absent some reasonable explanation. See United States v. Brown, 567 F. App'x 272, 282 (5th Cir. 2014) ("Lopez also misled the magistrate by asserting that Brown was on federal parole for drug-related charges when he was in fact on supervised release for a weapons charge. As the affiant, if Lopez did not know his information to be false, he should have known except for his reckless disregard of the truth."). The Government offers no explanation for the inaccurate criminal history. Nevertheless, even if the false statement was made with reckless disregard for the truth, the exclusionary rule will not apply if the Affidavit's remaining content establishes probable cause. See Ortega, 854 F.3d at 826.

D. **Probable Cause**

The Government argues that even if the false language was excised, Seawell's Affidavit would still establish probable cause.[30]

---

[29] Government's MTS Response, Docket Entry No. 31, p. 7.

[30] Id. at 3-4, 7.

The Affidavit still included two convictions involving drug distribution, albeit older ones. It also included information from the confidential source who had been inside the residence and saw drugs there within 72 hours of the warrant request. There is relatively little information in the Affidavit regarding the confidential source's credibility, although he did routinely and accurately update Seawell on the various rental vehicles being used by Defendant. More importantly, the presence of drugs was corroborated by the October 5, 2020, trash pull from the residence. And Seawell details his surveillance of many interactions suggestive of drug distribution at or near the residence. These remaining facts in Seawell's Affidavit establish probable cause because they2 show "a fair probability that contraband or evidence of a crime [would] be found" at the 1100 Orlean Street residence. See Gates, 103 S. Ct. at 2320. Because the warrant was supported by probable cause, the exclusionary rule does not apply, and Defendant's Motion to Suppress will be denied.

### III.  Defendant's Motion to Dismiss

Defendant challenges the constitutionality of 18 U.S.C. § 922(g)(1) on three grounds. First, he argues that the statute violates the Second Amendment in light of New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111 (2022). Second, Defendant argues that § 922(g)(1) violates the Equal Protection Clause by unevenly burdening Second Amendment rights based on state

residence. Third, Defendant argues that the statute exceeds Congress's power under the Commerce Clause.

**A.  The Second Amendment**

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In District of Columbia v. Heller, 128 S. Ct. 2783, 2786 (2008), the Supreme Court held that the Second Amendment protects the right to possess a handgun in the home for self-defense. In McDonald v. City of Chicago, Illinois, 130 S. Ct. 3020 (2010), the Court held that the Second Amendment applies to the states through the Fourteenth Amendment. In Bruen, 142 S. Ct. at 2122, the Court held that the Second Amendment also protects possession of a handgun outside the home for self-defense and that this right was violated by a "proper-cause" gun licensing standard that required applicants to "demonstrate a special need for self-protection." Id. at 2123.

Bruen also substantially clarified the scrutiny applicable to regulations of gun possession and carry. A court starts by asking whether the "Second Amendment's plain text covers [the] individual's conduct." Id. at 2126. This includes the question of whether the person challenging the regulation is one of "the people" who has Second Amendment rights. See id. at 2134 ("It is undisputed that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of 'the people' whom the

-10-

Second Amendment protects."); United States v. Rahimi, 61 F.4th 443, 452 (5th Cir. 2023), ("Heller's reference to 'law-abiding, responsible' citizens meant to exclude from the Court's discussion groups that have historically been stripped of their Second Amendment rights . . . Bruen's reference to 'ordinary, law-abiding' citizens is no different."). If the Amendment's plain text covers the person and his conduct, that conduct is presumptively protected. Bruen, 142 S. Ct. at 2129-30.

Prior to Bruen, the courts of appeals had coalesced around two-step scrutiny for regulations of protected conduct. Id. at 2126. At step one, "[i]f the government [could] prove that the regulated conduct falls beyond the Amendment's original scope [based on its historical meaning], 'then the analysis [would] stop there; the regulated activity [was] categorically unprotected.'" Id. If the government could not make this showing, it could still prevail at step two by meeting intermediate or strict scrutiny. Id. at 2126-27. Bruen essentially adopted and elaborated on step one and eliminated step two.[31] The Government must "demonstrat[e] that it is consistent with the Nation's historical tradition of

---

[31]Bruen, 142 S. Ct. at 2127 ("Despite the popularity of this two-step approach, it is one step too many. Step one of the predominant framework is broadly consistent with Heller, which demands a test rooted in the Second Amendment's text, as informed by history. But Heller and McDonald do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.").

firearm regulation." Id. at 2130. To do so, the Government must "identify a well-established and representative historical analogue" but need not find "a historical twin." Id. at 2133 (emphasis in original). "So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." Id.

The Government argues that § 922(g)(1) passes Bruen scrutiny because the Second Amendment's protections do not extend to felons.[32] Prior to Bruen, the Fifth Circuit held that § "922(g)(1) does not violate the Second Amendment." United States v. Darrington, 351 F.3d 632, 634 (5th Cir. 2003).[33] The court confirmed that "felons, infants and those of unsound mind may be prohibited from possessing firearms." Id. at 635 (quoting United States v. Emerson, 270 F.3d 203, 261 (5th Cir. 2001). And although these cases predated the two-step framework explained above and Bruen, they were premised on the fact that felons had historically lacked Second Amendment rights: "[We] read Emerson as excluding felons as a class from the Second Amendment's protection . . . as historically understood in this country." Darrington, 351 F.3d at 635. This is reinforced by the Supreme Court's repeated reference to prohibitions on gun possession by felons as "presumptively

---

[32] Government's MTD Response, Docket Entry No. 32, p. 7.

[33] See also United States v. Scroggins, 599 F.3d 433, 451 (5th Cir. 2010) ("criminal prohibitions on felons (violent or nonviolent) possessing firearms" do not violate the Second Amendment).

-12-

lawful" regulations that do not offend the Second Amendment. See Heller, 128 S. Ct. at 2816-17 (stating that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"); McDonald, 130 S. Ct. at 3047; Bruen, 142 S. Ct. at 2162 (Kavanaugh, J. and the Chief Justice, concurring). The Fifth Circuit decision in Rahimi makes a similar point, stating that "Heller's reference to 'law-abiding, responsible' citizens" and "Bruen's reference to 'ordinary, law-abiding' citizens" "meant to exclude from the Court's discussion groups that have historically been stripped of their Second Amendment rights." See United States v. Rahimi, 61 F.4th 443, 452 (5th Cir. 2023). Emerson, Darrington, Scroggins, Heller, McDonald, Bruen, and Rahimi span over twenty years, and Second Amendment scrutiny has changed over that period. But each case has consistently held or implied that convicted felons forfeit Second Amendment rights. Bruen scrutiny is therefore not triggered, and Defendant's Second Amendment challenge fails.

**B.   The Equal Protection Clause**

Next Defendant argues that "Section 922(g)(1) violates equal protection by abridging the right to bear arms based on varied state statutes."[34] "The Equal Protection Clause demands that similarly situated persons be treated similarly under the law." Sonnier v. Quarterman, 476 F.3d 349, 367 (5th Cir. 2007). A law is

---

[34]Defendant's Motion to Dismiss, Docket Entry No. 29, p. 9.

subject to strict scrutiny if it targets a suspect class or unevenly burdens a fundamental right. See id. at 368. As Defendant concedes, the Fifth Circuit previously rejected the argument that § "922(g)(1) amounts to an equal protection violation because it depends on varying state law regimens for defining criminal conduct and for the restoration of the right to bear arms." Darrington, 351 F.3d at 634-35. But Defendant states that these holdings are obsolete after Bruen because he now has Second Amendment rights.[35] As explained above, Bruen changed the scrutiny of laws regulating protected conduct, but it did not disturb the holding that felons lack Second Amendment rights. Section 922(g)(1) cannot be said to unevenly burden Second Amendment rights that do not exist. Defendant's Equal Protection Clause challenge therefore fails.

**C.  The Commerce Clause**

Defendant argues that § 922(g)(1) exceeds Congress's power under the Commerce Clause.[36] "That theory is foreclosed under Fifth Circuit precedent." United States v. Everist, 368 F.3d 517, 519 (5th Cir. 2004). Defendant acknowledges the Fifth Circuit's rejection of this argument, but he presents the issue to preserve it for appeal.[37] Because of the binding precedent, Defendant's

---

[35] Id. at 10.

[36] Id. at 11-13.

[37] Id. at 13.

Commerce Clause challenge fails. Because all of Defendant's constitutional challenges to § 922(g)(1) fail, the Motion to Dismiss will be denied.

### IV.    Conclusion and Order

Because Seawell's Affidavit contained sufficient information to establish probable cause to search Defendant's 1100 Orlean Street residence, Defendant's Motion to Suppress (Docket Entry No. 28) is **DENIED**. Because 18 U.S.C. § 922(g)(1) does not violate the Second Amendment or Equal Protection Clause and because it does not exceed Congress's power under the Commerce Clause, Defendant's Motion to Dismiss (Docket Entry No. 29) is **DENIED**.

**SIGNED** at Houston, Texas, on this 10th day of August, 2023.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE